# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| JERAHMIA HARDMAN,<br><br>                **Plaintiff,**<br>      vs.<br>ROOSEVELT CITY, ROOSEVELT CITY POLICE DEPARTMENT, OFFICER PETE BUTCHER, and DETECTIVE TRACY BIRD,<br><br>                **Defendants.** | **MEMORANDUM DECISION & ORDER**<br><br>**Case No. 2:18-cv-00785-DBP**<br><br>**Magistrate Judge Dustin B. Pead** |

On May 17, 2019, the Court conducted oral argument on Plaintiff Jerahmia Hardman's ("Plaintiff" or "Mr. Hardman") pending Motion for Leave to File an Amended Complaint.[1] (Dkt. No. 29). Plaintiff was represented by counsel, Aaron W. Owens, and Defendants Roosevelt City, Officer Pete Butcher and Detective Tracy Bird (collectively "Roosevelt Defendants") were represented by counsel, Heather S. White. (Dkt. No. 42.) After consideration of the parties' briefing and argument along with the relevant legal authorities, for the reasons set forth herein, the Court **DENIES** Plaintiff's Motion to Amend.

---

[1] The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (Dkt. No. 18); *see* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73.

# FINDINGS OF FACT[2]

1.      Mr. Hardman brought this action against the Roosevelt Defendants, asserting claims under 42 U.S.C. § 1983 and the Utah Constitution, based on the Roosevelt Defendants' alleged destruction and failure to preserve exculpatory evidence in connection with a criminal prosecution against Mr. Hardman. (Dkt. No. 2.)

2.      The Roosevelt Defendants moved to dismiss Mr. Hardman's complaint. (Dkt. No. 15.)

3.      On February 27, 2019, the Court held a hearing on the motion to dismiss. (Dkt. No. 42.) It granted that motion in its entirety, but also granted Mr. Hardman until March 12, 2019, to file a motion seeking leave to amend his complaint. (Dkt. No. 28.)

4.      Mr. Hardman filed a timely motion for leave to amend, proposing an amended complaint in which he identified six new causes of action. Plaintiff's first five claims are titled "Civil Rights Violations under 42 U.S.C. § 1983 – Fourth, Fifth, and Fourteenth Amendments," with the third claim described as "Roosevelt City's Failure to Properly Train Defendants Butcher and Bird," the fourth claim described as "Defendant Roosevelt City's Failure to Supervise and Respond to Citizen Complaints," and the fifth claim described as "Defendants Actions were a Malicious Prosecution of Plaintiff." The sixth cause of action asserts violations of article I, § 7 of the Utah Constitution. (Dkt. No. 29 and 29-1.)

---

[2] In determining Plaintiff's motion, the Court accepts all facts alleged in the proposed amended complaint as true. *See Mayfield v. Bethards,* 826 F.3d 1252, 1255 (10th Cir. 2016).

5. The facts alleged in the proposed amended complaint remain largely unchanged from those set forth in Mr. Hardman's original complaint. (Dkt. No. 29-1.)

**CONCLUSIONS OF LAW**

I. **Plaintiff's Proposed Claims**

Although not entirely clear, Mr. Hardman appears to seek leave to amend his complaint to assert the following claims: (1) a due process claim under § 1983 based on the use of allegedly coerced statements from his daughter to initiate the prosecution against him; (2) a substantive due process claim under § 1983 based on the manner in which he was interrogated; (3) a claim under § 1983 for violation of his right against self-incrimination; (4) a malicious prosecution claim under § 1983; and (5) a claim for violation of his due process rights under the Utah Constitution based on the same conduct giving rise to (1) through (4). Proposed claims (1) through (4) appear to be asserted against Defendants Officer Pete Butcher ("Officer Butcher") and Detective Tracy Bird ("Detective Bird") in their individual capacities, as well as against Defendant Roosevelt City based on the theory that it failed to adequately train and supervise Officer Butcher and Detective Bird (fourth and fifth causes of action).

II. **Standard of Review**

Rule 15(a) of the Federal Rules of Civil Procedure states "leave to amend shall be freely given when justice so requires." *Duncan v. Manager, Dep't. of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quotation marks omitted). Courts, however, will "refuse leave to amend . . . on a showing of undue delay, undue prejudice to the opposing party, bad faith

or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Id.* (quotation marks omitted).

This case does not involve undue delay, undue prejudice, bad faith or dilatory motives, or a failure to cure deficiencies by amendments previously allowed. Mr. Hardman's motion should nevertheless be denied because his proposed amendments are futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotation marks omitted).

### III. Analysis

#### There is no Fourteenth Amendment right not to have an allegedly coerced statement of a third party used to initiate a prosecution.

Mr. Hardman's proposed first (and possibly second) cause(s) of action appear to be based, at least on part, on the assertion that the Roosevelt Defendants' use of his daughter's statements, which Plaintiff maintains were improperly obtained, violated his due process rights. (*See* Prop. Am. Compl. [Dkt. No. 29-1] ¶ 68.)

In *Papadakos v. Norton*, the court determined there is "no substantive due process right under the Fourteenth Amendment to remain free from being arrested for, or charged with, a crime based on the allegedly coerced statements of a third party." 663 Fed. App'x. 651, 658 (10th Cir. 2016) (unpublished). In light of *Papadakos*, Mr. Hardman cannot establish a violation of his substantive due process rights based on the alleged use of a coerced statement from his minor daughter. In the alternative, Officer Butcher and Detective Bird would be entitled to qualified immunity as the law was not clearly established at the time of Mr. Hardman's arrest. *See Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015).

### **Mr. Hardman has not alleged that the interrogation of him rose to the level of conscience shocking.**

Additionally, Mr. Hardman's proposed first (and possibly second) cause(s) of action appear to be based on the assertion that his interrogation violated his substantive due process rights. (*See* Prop. Am. Compl. [Dkt. 29-1] ¶ 70.) In order to establish a Fourteenth Amendment substantive due process claim, Mr. Hardman must identify either a fundamental liberty interest or show that the interrogation "shocks the conscience." *C.G. v. City of Fort Lupton*, 2014 WL 2597165, at *9 (D. Colo. June 10, 2014).

As an initial matter, Mr. Hardman does not identify any fundamental liberty interest at play. *See Chavez v. Martinez*, 538 U.S. 760, 776 (2003) (explaining, "we can find no basis . . . to suppose that freedom from unwanted police questioning is a right so fundamental that it cannot be abridged absent a 'compelling state interest'"). Thus, the issue before the court is whether the interrogation rose to the level of "conscience shocking." In general,

> Conduct that shocks the judicial conscience . . . is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice. This strand of substantive due process is concerned with preventing government officials from abusing their power, or employing it as an instrument of oppression. Not all governmental conduct is covered, however, as only the most egregious official conduct can be said to be arbitrary in the constitutional sense.

*Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (internal quotation marks omitted). Whether an interrogation shocks the conscience is an inquiry separate and distinct from the issue of whether a confession was coerced. The "coerced-confession inquiry looks at the state of mind of the suspect—whether a suspect's will was overborne by the totality of the circumstances surrounding the giving of a confession." *Tinker v. Beasley*, 429 F.3d 1324, 1328-29 (11th Cir. 2005) (internal quotation marks and alterations omitted). In contrast, the shocks-

5

the-conscience inquiry, focuses on the "objective unreasonableness of the officers' conduct." *Id.* Whether or not an officer's conduct rises to a shock the conscience level is an issue of law, to be determined by the court. *C.G.*, 2014 WL 2597165 at, *10.

Mr. Hardman does not allege any facts indicating that the interrogation rose to a conscience shocking level. Officer Butcher and Detective Bird interrogated Mr. Hardman only once. During that time Plaintiff alleges Defendants were persistent, lied about the strength and amount of evidence against him[3] and informed him that things would be worse if he failed to confess. Mr. Hardman makes no claim that Officer Butcher and Detective Bird used physical force, yelled, acted aggressively, or used harsh language toward him. Additionally, there are there no allegations that Mr. Hardman or his family was threatened, that Plaintiff was kept in isolation, that he was prevented from contacting family, friends, or counsel or that Plaintiff was denied any reasonable accommodation (such as food, water, medication, clothing, or sleep). (Dkt. No. 29-1, ¶¶ 28-39.) This is further reflected in the recording of the majority of the interrogation. (See Hardman Interview Recording, Dkt. No. 31.)[4]

---

[3] Even in the context of the voluntariness of a confession—a different inquiry than that raised by Mr. Hardman's substantive due process claim—"courts have consistently upheld the use of deceptive interrogation tactics so long as those tactics are not unduly coercive." *United States v. Chee*, 2006 WL 2355837, at *5 (D. Utah Aug. 15, 2006) (unpublished), *aff'd*, *United States v. Chee,* 514 F.3d 1106 (10th Cir. 2008).

[4] In evaluating a motion to dismiss, the Court is entitled to consider the recording, since the interrogation is referenced in Mr. Hardman's proposed amended complaint and is central to his claims. See *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942-43 (10th Cir. 2002) ("In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). While the recording ends prior to Mr. Hardman signing the statement, there is no allegation that the available portion of the recording is inaccurate or inauthentic.

In *C.G. v. City of Fort Lupton,* the officer "repeatedly accused [the ten-year old plaintiff] of lying, threatened him with incarceration, continued to question him at the police station without allowing access to his parents, and failed to immediately explain that he had the right to remain silent." 2014 U.S. Dist. LEXIS 78817, at *30 (D. Colo. May 19, 2014). Under even more extreme circumstances than those before this court, the district court determined that the interrogation did not rise to the level of conscience shocking. *Id.* Similarly, in *Battle v. Whetsel,* the court rejected a claim that similar interrogation tactics rose to the level of conscience shocking behavior. 2006 U.S. Dist. LEXIS 95674 (W.D. Okla. July 17, 2006.) The court stated:

> [T]he videotape demonstrates that Plaintiff's co-defendant Harmon was in the room with Plaintiff for a matter of seconds. In addition, the entire videotape of Plaintiff's interrogation is approximately 2 and ½ hours. Defendants did not question Plaintiff during the entirety of this time and, for a period of approximately 20 minutes, Plaintiff's father was allowed to speak with her without the presence of the Defendants. Plaintiff was not interrogated for hours as she alleges. Nor was Plaintiff subjected to physical abuse or harm.
>
> With respect to Plaintiff's claim that police made threats regarding her children, the record demonstrates that Defendants told Plaintiff other witnesses had seen her boyfriend, Chris Lancaster, at the scene of the crime. They also told Plaintiff that her boyfriend admitted to his participation in the crime. Plaintiff, however, continued to deny that her boyfriend was there, instead maintaining that he was in another city at the time the crime was committed. Plaintiff was insistent that she was telling the truth and attempted to buttress her credibility with Defendants by referencing her children and their importance to her. In this context, Defendants reminded Plaintiff that she could help herself by telling the truth and asked her whether protecting her boyfriend was worth hurting her children.

*Id.* at *13 (unpublished).

Indeed, courts from other jurisdictions considering more egregious interrogation techniques than those present here, have concluded the interrogation did not rise to the level of conscience shocking. *See, e.g.*, *Smith v. Campbell*, 295 F. App'x. 314 (11th Cir. 2008) (involving a six to eight hour interrogation beginning at 3:00 a.m. during which the plaintiff was

7

not given food or allowed to sleep or take her anti-anxiety medication, was questioned by up to six deputies at a time, was yelled and sworn at when she denied the shooting, and was told if she would just confess she could check on her son and see the victim (her boyfriend) at the hospital); *Tinker v. Beasely*, 429 F.3d 1324 (11th Cir. 2005) (per curiam); *Tinker v. Beasley,* 2006 U.S. App. LEXIS 20082 (11th Cir., Jan 26, 2006) (en banc) (involving interrogation over several days of incarceration during which officers "interviewed plaintiff repeatedly, telling her that her lawyer had 'bailed out' on her, that they were all she had to get her out of trouble, that she would never see her children again unless she confessed, and that she had two options: the electric chair or life in prison"); *Callaway v. New Jersey State Police Troop A*, 2015 WL 1202533 (D.N.J. Mar. 17, 2015) (unpublished) (involving interrogation of an inmate where defendants grabbed the inmate, injuring his ribs, denied the inmate's requests for medical treatment, made threatening remarks, took the inmate's shoes and denied his request for food or water); *Iqbal v. Dep't of Justice*, 2014 WL 169867 (M.D. Fla. Jan. 15, 2014) (unpublished) (involving interrogation during which FBI agents accused plaintiff of immigration fraud, threatened to deport him, made threats about him being hit by a car, and made racist statements); *McConkie v. Nichols*, 392 F. Supp. 2d 1 (D. Me. 2005) (noting most cases finding an interrogation shocks the conscience involves some indication of physical force).

Moreover, even assuming the officers' interrogation of Mr. Hardman was deemed conscious shocking, Officer Butcher and Detective Bird are entitled to qualified immunity because it was not clearly established at the time of the interrogation that their tactics violated Mr. Hardman's constitutional rights. The only cases from the Tenth Circuit evaluating such a claim are *C.G. v. City of Fort Lupton* (2014) and *Battle v. Whetsel* (2006), and Mr. Hardman

does not present overwhelming authority from other jurisdictions that would have put a reasonable officer on notice that his conduct was unconstitutional.

### Absent any use of Mr. Hardman's statements from the interrogation at trial or a pretrial proceeding, Mr. Hardman cannot establish a violation of his Fifth Amendment right against self-incrimination.

Mr. Hardman's proposed second cause of action, appears to assert a violation of his Fifth Amendment right against self-incrimination. (*See* Prop. Am. Compl. [Dkt. No. 29-1] ¶¶ 79, 81.) However, Mr. Hardman did not proceed to trial and there are no allegations that his statements from the interrogation were ever used in a pretrial proceeding. Absent such use at "trial," Mr. Hardman cannot establish a violation of his Fifth Amendment right against self-incrimination.

In *Chavez v. Martinez*, Justice Thomas, writing for a plurality of the Court, explained that "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a *criminal case* against the witness." 538 U.S. 760, 769 (2003) (emphasis added). In Justice Thomas' view, "[a] 'criminal case' at the very least requires the initiation of legal proceedings", *Id.* at 766, because "the Fifth Amendment's text 'focuses on courtroom use of a criminal defendant's compelled, self-incriminating testimony.'" *Vogt v. City of Hays, Kansas*, 844 F.3d 1235, 1239 (10th Cir.), *cert. granted sub nom. City of Hays, Kan. v. Vogt*, 138 S. Ct. 55, 198 L. Ed. 2d 781 (2017), and *cert. dismissed as improvidently granted sub nom. City of Hays, Kans. v. Vogt*, 138 S. Ct. 1683, 201 L. Ed. 2d 34 (2018) (quoting *Chavez*, 538 U.S. at 777 (Souter, J., concurring in the judgment). The Supreme Court did not, however, decide "the precise moment when a 'criminal case' commences." *Chavez*, 538 U.S. at 766-67.

Post *Chavez,* a split "developed over the definition of a 'criminal case' under the Fifth Amendment" with the Third, Fourth and Fifth Circuits holding that it is "only a trial right" and

the Second, Seventh and Ninth Circuits holding that "certain pretrial uses of compelled statements can be violative." *Vogt v. City of Hays,* 844 F.3d at 1240 (citing cases).  In early 2017, the Tenth Circuit weighed in on the post-*Chavez* circuit split, concluding that the term "criminal case," for purposes of a Fifth Amendment claim asserted under § 1983, "covers at least one pretrial proceeding:  a hearing to determine probable cause." *Id.* at 1241.  In early 2017, the Tenth Circuit weighed in, concluding that the term "criminal case" for purposes of a Fifth Amendment claim asserted under § 1983, "covers at least one pretrial proceeding:  a hearing to determine probable cause." *Id.*  The Tenth Circuit did not hold that "criminal case" includes the initiation of a criminal prosecution.  Thus, under current precedent, Mr. Hardman cannot state a claim for violation of his Fifth Amendment rights, since he has not alleged his statements were ever used against him during trial or at a pretrial hearing, such as a probable cause hearing.

Further, even if this Court were willing to adopt a more expansive reading of the Fifth Amendment right against self-incrimination, Officer Butcher and Detective Bird would nevertheless be entitled to qualified immunity.  *Id.* at 1247 (given the circuit split, the police officers "could not have known that the Fifth Amendment could be violated by the eventual use of the compelled statement to develop investigatory leads, initiate a criminal investigation, bring charges or support the prosecution in a probable cause hearing. As a result, the alleged constitutional violation was not clearly established.").  Mr. Hardman was arrested and charged in early 2015.  (*See* Prop. Am. Compl. [Dkt. No. 29-1] ¶¶ 20, 71, 53, 4.)  At that point, the Tenth Circuit had not yet decided *Vogt*, which itself does not clearly establish the right Mr. Hardman asserts was violated in this case.  And, as explained above, the circuit split that existed in 2015 (and continues to exist) cannot give rise to clearly established law.

**Mr. Hardman cannot establish a malicious prosecution claim.**

In order to "succeed on a section 1983 claim for malicious prosecution plaintiff must satisfy the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Hooper v. Pearson*, 2010 WL 2990809, at *15 (D. Utah July 26, 2010) (unpublished). These elements are the "starting point" of the analysis, with the ultimate question being "whether plaintiff has proven the deprivation of a constitutional right." *Id.* (quotation marks omitted). In this case, Mr. Hardman's proposed fifth cause of action, asserting a malicious prosecution claim in violation of the Fourth Amendment, would be subject to dismissal because probable cause, or at least arguable probable cause, existed for his arrest and prosecution.

"Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent officer in believing that an offense has been or is being committed." *Nunez v. Hamdan*, 2013 WL 5408536, at *4 (D. Utah Sept. 25, 2013) (unpublished) (quotation marks and brackets omitted). "The standard of probable cause does not require indubitable or necessarily convincing evidence, but only so much reasonably trustworthy information as to warrant a prudent man in believing that the arrestee has committed or is committing an offense." *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1450 (10th Cir. 1985) (quotation marks and brackets omitted).

Under Utah Code § 76-5-404, "[a] person commits forcible sexual abuse if the victim is 14 years of age or older and . . . the actor touches . . . any part of the genitals of another or causes

11

another to take indecent liberties with the actor . . . , with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant." Utah Code Ann. § 76¬5-404(1). And, under Utah Code § 78-5-404.1, the same conduct constitutes sexual abuse of a child if the child is under the age of fourteen. Utah Code Ann. § 76-5-404.1(1)(b), (2).

Here, despite the issues with a portion of the recording of Plaintiff's interrogation being unavailable, Officer Butcher and Detective Bird had probable cause to arrest Mr. Hardman.[5] During his interrogation Mr. Hardman admitted, apart from his signed statement, that he touched his daughter:

> Q: When's the first time with you and [J] that a problem occurred? Was it before your daughter passed away?
> A: No. It was after.
> Q: Was it before you guys moved into Ballard Park when you were at your parents' or when was it?
> A: Parents for a little bit, and then when we got to Ballard. I started slowing down. I couldn't do it anymore.
> Q: Okay.
> A: I felt bad about it.
> Q: And is that guilt that you had, are you then willing to make the change?
> A: Yes.
> Q: Okay. And when this happened, was it generally at night when Kim was sleeping?
> A: Yes.

---

[5] Where, as here, there is no dispute about the information the officers had, the Court can decide whether probable cause existed as a matter of law. *See, e.g.*, *Roberts v. Cottonwood Heights City*, 2016 WL 2344219, at *3 (D. Utah May 3, 2016) (unpublished) ("Plaintiff correctly argues that the existence of probable cause is generally a mixed question of law and fact. However, this does not mean that the existence of probable cause, or lack thereof, may never be decided on a motion for judgment on the pleadings. The Tenth Circuit has stated: The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it probable or true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to probable cause, is a question of law. As set forth above, even assuming the facts set forth in Plaintiff's Amended Complaint to be true, probable cause existed to support Plaintiff's prosecution.") (internal quotation marks omitted).

> Q: Okay. And was it always in the bathroom or was it any other place?
> A: No, we never did it in the bathroom. I did it in the room. You know, I didn't, you know, do any of the f---in' nasty -----, I just touched her, That was about it.
> Q: Sure. So what you're telling me is that your penis never went into her vagina?
> A: No, sir.

(Hardman Recording at 1:21, Dkt. No. 31 and 34; Ex. A.) [6] Notably, Mr. Hardman's statements are consistent with the information that his daughter and her mother had provided. (*See* J.H. and Mother Video Interview, Dkt. No. 32.)[7]; *see also Munday v. Johnson,* 257 F. App'x. 126, 131 (10th Cir. 2007) (" [a] police officer can base a probable cause determination upon a witness's statement.").[8] Thus, based on Mr. Hardman's statement, along with the report of J.H. and her mother, a reasonable officer could believe that Mr. Hardman had sexually abused his daughter. Further, Officer Butcher and Detective Bird are entitled to qualified immunity because they had "arguable probable cause" to arrest Mr. Hardman. *See Cortez v. McCauley*, 478 F.3d 1108, 1120 & n.15 (10th Cir. 2007) ("Even law enforcement officials who reasonably but mistakenly

---

[6] While Mr. Hardman alleges that the officers improperly directed him what to write in his written statement (*See* Prop. Am. Compl. [Dkt. No. 29-1] ¶ 45), the recording reveals Mr. Hardman's own words in response to relatively open-ended questions. And reviewing, as a whole, that portion of the recording available, the questioning of Officer Butcher and Detective Bird does not indicate that under the totality of circumstances Mr. Hardman's "will ha[d] been overborne and his capacity for self-determination critically impaired." *Sharp v. Rohling*, 793 F.3d 1216, 1233 (10th Cir. 2015).

[7] The interview of J.H. was likewise referenced in and central to Mr. Hardman's proposed amended complaint, and can be considered. *See Jacobsen v. Deseret Book*, 287 F.3d 936, 942- 43 (10th Cir. 2002).

[8] This is true even if there are inconsistencies in J.H.'s and her mother's statements— which are minor, if any. *Easton*, 776 F.2d at 1449; *see also Garcia v. Casuas*, 2011 WL 7444745, at *45 (D.N.M. Dec. 8, 2011) (unpublished).

13

conclude that probable cause is present are entitled to immunity. . . . Some courts have referred to this standard as 'arguable probable cause.'"). In addition, Mr. Hardman's proposed fifth cause of action asserting a malicious prosecution claim in violation of the Fourth Amendment would also be subject to dismissal because Plaintiff fails to plead facts establishing malice. There are no facts pleaded that, if proven, demonstrate the officers arrested and prosecuted Mr. Hardman for a reason other than to bring him to justice.

Because probable cause, or at least arguable probable cause, existed for Mr. Hardman's arrest, and Mr. Hardman fails to plead facts showing malice, his malicious prosecution claim would be subject to dismissal.

### Mr. Hardman's Proposed Amended Complaint Does Not Allege Sufficient Facts to Support Municipal Liability of Roosevelt City.

Mr. Hardman's proposed claims under § 1983 against Defendant Roosevelt City ("Roosevelt City") are also futile for the independent reason that Plaintiff fails to sufficiently allege a factual basis for municipal liability. Mr. Hardman attempts to rely on one bases for municipal liability: "the failure to adequately train or supervise employees" *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation marks omitted). (*See* Dkt. No. 29 at 6-7 and Prop. Am. Compl. [Dkt. No. 29-1] ¶¶ 91-130.) In order to give rise to municipal liability, however, "that failure [must] result[] from 'deliberate indifference' to the injuries that may be caused." *Id.* (quotation marks omitted).

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."

*Id.* (quotation marks omitted). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct."[9] *Id.* (quotation marks omitted).

Mr. Hardman attempts to allege deliberate indifference by pointing to (1) a prior incident in which criminal charges against a man Officer Butcher had arrested were dismissed due to a finding Officer Butcher had fabricated and omitted material information in obtaining the arrest warrant (*See* Prop. Am. Compl. [Dkt. No. 29-1] ¶¶ 13-17, 60); (2) a case in which "Defendant Butcher was found to have substandard performance in a case where the life of a man was taken due to his performance and carelessness" (*Id.* ¶ 61); and (3) a case in which "Detective Butcher [was] involved . . . where a juvenile was prosecuted wrongly for a charge he did not commit, based in [sic] Detective Butcher's failure to properly investigate the identity of the alleged perpetrator and his false testimony and identification of that juvenile" (*Id.* ¶ 62.) There are no allegations that Roosevelt City had actual or constructive notice of Officer Butcher's allegedly unconstitutional conduct *prior* to the interrogation and criminal prosecution at issue here, which occurred in early 2015.

With respect to the first incident, while Mr. Hardman alleges the interrogation occurred in December 2013 (*Id.* ¶ 13), prior to his own interrogation and arrest, it wasn't until 2016 that the individual involved "filed suit in Federal Court against Defendant Butcher and Roosevelt City" after the charges against him were dismissed. (*Id.* ¶ 17.) The criminal docket confirms that

---

[9] The Tenth Circuit has also recognized that "[i]n a narrow range of circumstances . . . , deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Id.* (quotation marks omitted). Mr. Hardman's proposed amended complaint does not contain any allegations that would trigger this narrow exception.

15

the charges were not dismissed until October 2015—months *after* Mr. Hardman was interrogated, arrested, and charged. And, there is no allegation Roosevelt City had notice of the constitutional violations asserted based on that case.

There are likewise no allegations about when the other two incidents referenced in Mr. Hardman's proposed amended complaint occurred, or when Roosevelt became aware of the alleged unconstitutional conduct of Officer Butcher in connection with those incidents. (*See* Prop. Am. Compl. [Dkt No. 29-1] ¶¶ 62-63.) Indeed, Mr. Hardman's allegations appear to imply that those incidents occurred *after* Mr. Hardman's interrogation and prosecution. (*Id.* ¶¶ 19, 59.) Further, the second incident appears to involve issues of alleged excessive force, which is an issue distinct from and unrelated to Mr. Hardman's claims in this case.

Thus, absent allegations that Roosevelt City was aware of unconstitutional conduct of a similar type alleged here, *prior* to Mr. Hardman's interrogation and prosecution, Mr. Hardman cannot establish the "deliberate indifference" required for a municipal liability claim based on an alleged failure to train or supervise. *See id.*; *Estate of Duke by & through Duke v. Gunnison Cnty. Sheriff's Office*, 752 F. App'x 669, 675 (10th Cir. 2018) (unpublished) (affirming summary judgment in favor of defendant–city on a municipal liability claim based on an alleged failure to train where "[t]here is no allegation that GCSO had prior experience with detainees in a sixteen-hour hold suffering lethal overdose"); *Hatch v. Wasatch Cnty.*, 2017 WL 3327574, at *6 (D. Utah Aug. 3, 2017) (unpublished) ("There is no viable evidence that Wasatch County had knowledge, either actual or imputed constructive knowledge, of Epperson's conduct prior to the acts alleged.").

### Mr. Hardman Cannot Establish A Violation Of His Rights Under The Utah Constitution.

As discussed by the court in its prior order, to assert a claim for damages under the Utah Constitution, a plaintiff must establish a flagrant violation of his constitutional rights. (Dkt. No. 38 at 13- 15); *see Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 58, 250 P.3d 465. "The test measuring the flagrance of a state constitutional violation is the same test which determines qualified immunity under § 1983." *Cardall v. Thompson*, 845 F. Supp. 2d 1182, 1197 (D. Utah 2012).

As with his original complaint, Mr. Hardman proposes to assert a claim under article I, § 7 of the Utah Constitution based on the same conduct giving rise to his claims under § 1983. While Mr. Hardman asserts that he "has shown that he has suffered a 'flagrant' violation of his constitutional rights under [article I, §7]" (Dkt. No. 29 at 8), he has not cited any cases interpreting that provision, in the context of his asserted claims, more broadly than the corresponding provisions of the United States Constitution. Accordingly, for the same reasons discussed above, Mr. Hardman cannot state a claim under the Utah Constitution.

### CONCLUSION

In this matter, each of Mr. Hardman's proposed amended claims would be subject to dismissal. Plaintiff cannot establish any of the constitutional violations he seeks leave to assert. In turn, Mr. Hardman has failed to allege facts sufficient to give rise to municipal liability. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (*citing City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (additional citations omitted)). Therefore, allowing Mr. Hardman to file his proposed amended complaint would be futile.

Accordingly, the Court **DENIES** Plaintiff's Motion for Leave to File Amended Complaint Memorandum and in Support. (Dkt. No. 29.)

DATED this 24th day of June, 2019.

BY THE COURT:

_____
Magistrate Judge Dustin B. Pead
United States District Court
District of Utah